Case number 16-8009 Gregory Couch versus Panther Petroleum LLC et al. Argument not to exceed 15 minutes per side. Mr. Hostetler, you may proceed for the appellant. Thank you. May it please the court? Good afternoon. Good afternoon. I represent the appellant and the debtor in this case Gregory Lane Couch. If it pleases the court, I'd like to just jump right into some of the facts that I believe support our position in this matter. At the trial court level, so to speak, we submitted a 16-page affidavit with a number of exhibits, which at that stage of the summary In that regard, do you want to reserve some time for rebuttal? I did. I reserved five minutes. Very good. So clock is running and everything. Thank you. Respectfully, I would submit that Judge Schaaf did not accept the facts that we proffered as entirely true. He seemed to be looking for a way almost around the facts that were submitted in our affidavit. There were no counter affidavits, factual affidavits submitted. Counsel Lehnertz submitted an affidavit which put in the record all of the pleadings from the state court case. But there were really no counter factual affidavits that were submitted. The case seems to... Excuse me, Counsel. Are you suggesting that if the facts were contrary to the finding of the state court, that the bankruptcy court was required to accept the facts articulated in the affidavit as true? I'm submitting that the court was required to accept the facts in the affidavit as true to the extent that they impacted on the court's consideration of whether or not Mr. Couch had a full and fair opportunity to litigate at the state court level. Only in that sense. Because that really is the crux of this case. Did he have a full and fair opportunity to litigate? He paid a $22,000 retainer to his state court counsel, Jeremy Little, to defend the case and also included in that sum was a retainer to defend Christopher Burns, who was a co-defendant, and ended up actually testifying against him at the hearing on damages. Mr. Little advised Greg that the case had been settled. Mr. Couch was thrilled to hear that. How was he informed? Verbally. Was there ever anything in writing given to Mr. Couch? No, sir. There was not. And Mr. Couch is not an attorney and he's not really even a sophisticated, what I would use that term somewhat cavalierly, but he's not really a sophisticated person. He does communicate with me via email, but the notice was given verbally. And that fact had to be accepted as true at the summary judgment level that that actually happened, that he did get a verbal notice that the case had been settled. And then when he moved back to London in April of 2014, he did not receive any of the pleadings, the motions, the notices of hearing that had been filed in the state court. And there's evidence in the record to suggest that his post office box was in fact closed and that he was not receiving those correspondence. We also put in our affidavit that Panther and Coolants knew where he was living in London, his physical address, that they had that information in his file, his personnel file, and that they chose not to provide that information to their counsel in the state court case or they chose simply not to send. And we have a litany of pleadings that they even admit were returned to them without getting to Mr. Couch. Interestingly enough, Mr. Couch throughout this time had an email address, a cell phone, and a Facebook page where Mr. Little could easily have contacted him. Interestingly enough, Mr. Little is no longer practicing law in Tennessee. He has moved to Missouri and I don't know what the status of his license is in Tennessee. I was able to track him down and I spoke with him over the phone on one occasion. I represented this court. He was defensive. And interestingly enough, the plaintiffs in this case did not obtain an affidavit from Mr. Little about what exactly... You didn't obtain one yourself, did you? No, but I did speak with him and as I said, he was defensive and was not interested in And all that aside, the only evidence in the record was that my clients were told by an attorney that they trusted and paid $22,000 to that their case had been settled. Is that hearsay? No, it would not have been because it was the declaration of a party, a party debtor that... But he's testifying as to what somebody told him. Yes, but I think... That doesn't mean that... I mean, it seems to me that's hearsay. It might have been, but I think it would fall under an exception for a present sense impression in this case where that's why he was not... Even if he had, he did not get notice of what was going on in the state court case, but his mental state was that the case was concluded. And it really goes to the totality of whether or not he had a full and fair opportunity here to defend this case. Also in the record is evidence that over $400,000 in sales proceeds were remitted to Panther for the sale of their products, that they received payment for their products at the prices they were charging when Greg acted as a middleman. Is that really relevant if he's diverting business opportunities from his employer? Well, it goes to the... That goes to the issue of whether or not he has defenses that he could assert if the case ever got to the merits. And also he... I think Greg would ultimately testify that Panther was aware of what was happening in this case. So it all just goes to the totality of did he really have a fair opportunity to defend himself? That issue goes to the question of this Consumer Protection Act. The judgment was just a little over $100,000, but it got trebled under the Tennessee Consumer Protection Act when my client's doing commercial sales, plus they got all their attorney fees. And so that damages amount could have been mitigated by evidence that Greg paid them the money they were owed for their product and that he did not have, that he did not act maliciously or, you know, that the ultimate judgment amount could have been significantly mitigated had he... Mr. Hossett, one of the things that troubles me about your theory is that the cases are How do you respond to that? Well ordinarily, ordinarily that would be true when your attorney is acting in good faith and, you know, I think that is ordinarily true. But this is a case where we're trying to decide if a default judgment for a half a million dollars, if that should be given collateral estoppel preclusive effect. And the thing that I think, the thing that I think is most important in rebutting that idea, that supposition, is that the two recent cases that have come down from the Tennessee bankruptcy courts in 14 and 15, the Bennett case and then the Vincent case, talk about the fifth element being that the party had a full and fair opportunity to contest the issue, now sought to be precluded. And even Judge Schaff acknowledged in his opinion in the Fisher case that the court is supposed to look at did the defendant make a conscious decision, a choice to voluntarily walk away from the lawsuit and not defend it, a knowing conscious decision to walk away from the case. Both of the cases, the Bursant case and the Fisher case, have facts where the defendant was aware of the case and he consciously chose to walk away from the litigation that was pending. Your client filed an answer and a counterclaim in this case, right? In the state court case, yes. In the state court case. And I guess some discovery was sent, but he didn't respond to that, do you know? Is that correct? Did he know that he got the discovery? Yes. And he did respond to it. He responded to it in writing, he gave his answers to the discovery to his attorney, Jeremy Little. Is that in the affidavit? I believe so. But that's admitted, really. There's no question but that they acknowledge he responded to the discovery initially. Their position is that he didn't respond sufficiently. And so they moved for a more definite response to produce more discovery. And that is the point where Greg stopped receiving the notices. So he did answer the discovery and Mr. Leonard will acknowledge that, I believe, but it was not answered as adequately as he would have liked. So, the bottom line is he just did not have a truly fair, if fairness is the approach, a truly fair opportunity to fully defend himself. And for that reason, I believe that he should have his day in court on the merits. Thank you. We'll hear from you again after, is it Mr. Leonard's ready? Good afternoon, your honors, and may it please the court. Again, my name is Joseph Leonard and I'm counsel for the Appelese Panther Petroleum LLC and Coolants Plus, Inc. Your honors, this is not a case of first impression. Rather, this case involves the unremarkable application of the bankruptcy court below's decision in the Anderson v. Fisher case, rendered by the same bankruptcy judge that rendered a decision in this case, which was affirmed by the panel as recent as 2014. And that case is factually and legally indistinguishable from this case. The sole issue on appeal, your honors, is whether or not the bankruptcy court erred in awarding Appelese's summary judgment, finding that the state court judgments that are rendered in Appelese's favor are entitled to collateral stoppable effect, and therefore the judgment debt owed by appellant to the Appelese is not dischargeable pursuant to sections 523A2A and 523A6. The Appelese, in this case, brought to the bankruptcy court state court final judgments on the merits rendered in a case where appellant appeared with counsel, filed an answer, filed a counterclaim, then proceeded to disregard the state court's discovery order for which a penalty default judgment was issued, and then after an evidentiary hearing on damages, the court rendered a damages award to the Appelese. What's significant in this case is that below and on appeal, the appellant does not dispute the key elements that are part of the Anderson analysis. And those three key elements are that, one, that the state court judgments address the same types of claims covered by this action, second, that the claims were actually litigated in the Tennessee state court, and finally, that the claims were necessary to the state court judgment. Therefore, in accordance with the Anderson decision, the state court judgments in this case were entitled to preclusive effect. Much of appellant's argument is an attempt to litigate the material facts of the underlying state court litigation. However, as dictated by the decision in Anderson, the bankruptcy court and this panel need only look at the findings and collusions that are set forth in the state court judgments. In other words, you just need to look at the face of those judgments to determine whether or not the Anderson analysis has been met. And again, there's no specific dispute as to whether or not the Anderson analysis has been met. Appellant's principal argument is that we need to create some kind of distinction with the Anderson analysis, that there's these two added more specific elements, namely that a judgment needs to be on the merits and that there needs to be a full and fair opportunity. Well, that's what occurred in this case. Indeed, appellant's ignoring the fundamental nature of a penalty default judgment. A penalty default judgment, as was noted in the Anderson decision by the panel, is quote, default judgments entered as a sanction where party has substantially participated in action in which he had full and fair opportunity to defend on the merits, but subsequently chooses not to do so and even attempts to frustrate the effort to bring this action to judgment. Therefore, the entry of the penalty default judgment in of itself confirms that the state court judgments were judgments on the merits and that appellant was given a full and fair opportunity to litigate those claims by the appellees on the merits. The mere fact that the judgments are penalty default judgments doesn't alter that analysis. Under Tennessee law, penalty default judgments are afforded a final and collateral estoppel effect. And again, I would emphasize that appellant appeared in that action, got notice of that litigation, answered, hired counsel, filed a counterclaim, and it was only after he began to disregard the court's discovery order that now this issue arises of blaming his state court attorney and whether or not he had been getting proper service. Did your client have any indication there was a disconnect between Mr. Couch and his attorney at this time? Yeah. I mean, the panel looks at the record. The state court attorney filed a motion to withdraw. And in that motion to withdraw set forth facts that suggested that he wasn't able to get in communication with his client. And I would, it's speculation, but I suspect because he wasn't able to communicate with his client regarding the court's directives regarding discovery, he felt it was necessary to withdraw from that case. And the record indicates that that motion withdrawal was served on appellant. And there was a hearing on that motion. The court properly granted that motion. So there'd be no reason for your client to contact that attorney afterwards if the attorney's withdrawn? Correct. And again, while he's represented by client, it would be inappropriate to directly contact Mr. Couch regarding his discovery failures. Appellants counsel wants to talk a lot about the full and fair opportunity element in the context of these later cases. However, if you turn to those later cases, I believe Mr. Hosteller cited the Bennett case as well as the Visant case. I mean, both of those cases are still on all fours with this case. In the Bennett case, for example, the court held there is no dispute that the state court judgment is a final judgment and that the parties are the same. The only critical issues are whether the fraud issue in this adversary proceeding was actually litigated in the state court case and whether the fraud issue was necessary state court judgment. Again, those elements are not in dispute in this case. And in the Visant case, the court said that because there's no question that the default judgment is a final order and that the defendant was a party and had an opportunity to defend in the prior suit, the only issues to be resolved are whether the same issue was raised in the prior suit and whether the issue was actually litigated. Again, elements that are part of the Anderson analysis that are not in dispute in this case. Turning to the two reasons why an appellant feels he wasn't given a full and fair opportunity, the first being that somehow blame needs to be imputed on his state court counsel for falsely informing him of the resolution of the case. Well, again, as Your Honor Preston pointed out, it's bedrock principle of Sixth Circuit law that clients are responsible for the acts and omissions of their counsel. That's clearly set forth in the Nafziger v. McDermott International case cited in Appellee's brief. Again, in that case, the Sixth Circuit adopted the rule that because a party, quote, voluntarily chose its attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation in which each party is deemed bound by the acts of its lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney. Consequently, any allegations regarding misconduct by his state court attorney have no legal bearing on the preclusive effect of the state court judgments. Indeed, blaming state court counsel is not grounds for reversal in this case. Again, as I pointed out to the panel, the record shows that state court counsel filed a motion withdrawal that was heard and properly granted by the court. If ultimately it proves, which we can only speculate, that Appellant has some type of claim against his state court counsel, then so be it. But any such claim is not a defense to this action. The second issue raised by Appellant as to why he believes there wasn't a full and fair opportunity is with regard to service. However, the record shows that service was properly conducted by the Appellee's counsel in the state court case. Tennessee law only requires the court and or a party to serve another party at the address that is last known and listed at the state court. Appellant filed an answer and a counterclaim and listed the address at which he was living at. And at no point did Appellant go back to the state court and say, your honor, I've actually moved back to Kentucky and here is my new address. Remind me of the chronology. When was his counsel allowed to withdraw? Before the entry of judgment, I assume? Correct. How long before the entry of judgment? I don't know the exact timeline or the months in between. No, don't take your time to look up that. I can find that. Do you know if the state court order authorizing withdrawal of counsel was served on the debtor? Correct. And again, the addresses used are the address listed in the answer and the counterclaim as well as a P.O. box that Mr. Couch had been using and in fact, that's the P.O. box address that Mr. Couch filed his bankruptcy case under. And so during the time that the order default was entered, it was served upon the P.O. box that was the address of record that Mr. Couch used in his bankruptcy case. And thank Appellant's counsel for pointing out that it appears that that order was entered in October of 2014 and then there was ultimately, I believe the discovery order was put on in November and a default judgment was put on in February of 2015. So that would be the chronology of events. Thank you. But again, under Tennessee law, the only obligation is to serve at that last known address that was listed with the court. There's no other obligation on the part of Appellees to serve and that's how the bankruptcy court found and that's how this court should find. As the bankruptcy court determined, Couch's arguments that a collateral estoppel does not apply, he said they were unavailing. Judge Schaaf found that Couch had every opportunity to participate in the Tennessee litigation and his excuses fall flat. The bankruptcy court properly determined that Anderson properly applies to the facts of this case and that Appellant hadn't created an issue of material fact regarding his counsel's alleged misrepresentation of settlement of the Tennessee litigation, that Appellant is responsible for his willful ignorance of the Tennessee litigation, and that Appellant's allegation that he did not receive notice at his Kentucky's address does not create a genuine issue of material fact. The bankruptcy court further found that the facts show that Appellant is not an innocent party and should benefit in equity and it even was admitted in the argument by Appellant's counsel that they're not shy in a way that Mr. Couch went off and set up this fraudulent scheme of another company and it seems that the argument is, well, I was wrong by them and therefore I wronged them and I think for those reasons that's why Judge Schaaf found that Appellant was not entitled to some relief in equity. To the extent Appellant now wants to try to relitigate the merits of the claims of the underlying state court litigation, this panel as well as the bankruptcy court below was precluded from reviewing the merits of those claims based upon the Rooker-Feldman doctrine. Appellant's counsel notes issues he has with the application of the Tennessee Consumer Protection Act. I don't feel it's ripe or proper for me to get into those merits. If your honors have questions, I'm happy to address those but under the Rooker-Feldman doctrine this court can't act as a review court for the state court and I would also point out that Appellant at no point has gone back to the state court to file something to say you need to set aside this judgment or afford him any other relief. And there's nothing prohibiting him from doing that, is there? I mean I would argue the merits of his entitlement to that relief, however, I believe he may have had a recourse at some point to seek that relief, correct? While you're taking a break, how do you respond to the lack of affidavit at the hearing before the bankruptcy court? Again, affidavit or not, any facts set forth in Mr. Couch's affidavit or any facts that would have been set forth in affidavits from my clients would be legally irrelevant. In Anderson, as affirmed by the BAP, the analysis is, and the test, is that you have to look at the facts and conclusions that are set forth in those state court judgments to determine whether or not collateral estoppel effect is applicable. In fact, in this case, Judge Schaaf just did that because we sought grounds to seek non-dischargeability based upon fiduciary duty grounds and he found that we had not met our burden, that there was not, in part because based upon his review of the findings and conclusions in those state court judgments, he didn't feel there was enough to find summary judgment in our favor. So it's evident in the record that Judge Schaaf actually properly applied that standard. So again, I would argue and point out that the standard here is not for us to come to court and re-litigate the merits of the case, it's not to set forth additional testimony, it's simply the court needs to analyze the state court judgments on their face and determine whether or not the elements in Anderson have been properly met. For these reasons, Your Honors, and based primarily on the application of the bankruptcy court decision in Anderson, which was affirmed by the panel, Appellees respectfully request that the panel affirm the bankruptcy court's granted summary judgment in their favor, determining that the judgment debt owed by appellant to the Appellees as determined by the state court judgment is non-dischargeable pursuant to sections 523.83b, 523.82a, and 523.86. And if Your Honors have no further questions. I have a question. Going back to the affidavit, how would you show the negative that you'd have to show, which is that there was proper notice in the setting that it was in? You couldn't have subpoenaed the attorney because he would have probably asserted attorney client privilege for the thing, right? Correct. And again, I go back to the standard. The standard is you have to look at the face of these judgments, and on the judgments there's certificate of service that reflect service on the addresses that were listed in the state court litigation. And then to be frank, it would be improper for us to go bother Mr. Couch's state court attorney. And again, if he feels that needs to be brought before court, so be it. But that's not properly before this court as some sort of defense to the non-dischargeability of the judgment debt. So it would be impossible almost for you or a client to come up with the affidavit that the appellant thinks you need? I don't know about impossible. I don't know if anything's impossible. But I would agree that it would put an undue burden on us to kind of reinvent out of air some affidavit that shows definitively that what his allegations are true. And again, I feel like the discussion is that we're somehow litigating whether or not those are not properly part of the Anderson analysis. Thank you very much. Thank you. You're welcome. Mr. Hochsetler, before you embark on your comments, did I hear you say that the only issue before this court is whether there's a full and fair opportunity for litigation? That is the crux of the case, yes. So are you abandoning the first argument that I saw in your brief, whether this was decided on the merits? I think that under Tennessee state law, a default judgment is on the merits. And I think that I'd like to first say that one of the statements of Judge Schaaf that Mr. Leonard quoted was he referred to my client as being willfully ignorant of the state court litigation. And that right there kind of shows you how Judge Schaaf looked at this case. He did not accept our affidavit as factually true as he was required to do at the summary judgment stage of litigation. And keep in mind that just because a summary judgment motion might be overruled, that doesn't mean that they're going to necessarily lose the case. They might win. All we're asking for is a chance to defend the non-dischargeability case on the merits of what they've alleged, that this was a willful and malicious injury, that there was actual fraud. We just want a chance to defend it on the merits. They might actually win. But Judge Schaaf... Is your real complaint one against the lawyer, not to set this aside? And that, Judge Schaaf, I believe he asked me the same question. And I don't know what Mr. Little has or doesn't have, but I would have to say no to that question because the court at this stage is supposed to be looking at the totality of the circumstances. And did Greg... We can include a certificate of service from the state court. Right, that my client never received. And if you accept his affidavit as accurate, they knew where they should have been sending this stuff to. If they're not required to serve in any other address other than what is reflected in the documents filed in the case, why is their service insufficient? I believe the Tennessee Rule of Civil Procedure at issue says that they're required to send it to his last known address. And isn't it the obligation of the litigant to make sure that the court file reflects the last known address or the most proper address? It would have been had Greg known that the case was still going on. But he received an order noting that his counsel was allowed to withdraw. No, he did not. He did not receive that. It was served by the court according to your opposing counsel. It was served on the address in the court file. It was mailed. It was mailed to the address that Jeremy Little put on his distribution list when he filed the motion to withdraw. It was mailed to that address and we have a whole litany of pleadings that by their own admission were returned to them unclaimed, unable to forward. He did not receive the order allowing Jeremy Little to withdraw as his counsel. Had he, and knowing him as I do, he would have been all over that. I mean, here I stand and I've been in this case for a year now. This is not Greg Couch. Greg Couch doesn't give a $22,000 retainer to a law firm for he and his co-defendant and file a 19-page counterclaim and then just stop participating in the case. The fundamental question before this court really is, was it fair? It's really kind of in an objective way, was this fundamentally fair to Greg? Why didn't your client go back to the state court for relief where all that could have been litigated? Well, I don't know the answer to that. The answer is that he didn't know, he didn't find out about the judgment until he got served with the adversary complaint in this very case. He didn't even know about it until, and that's in his affidavit. He had no knowledge of this judgment until the day he got served with the adversary complaint. That's when he first learned that there had been a judgment and we felt like we had to defend it here before we could do anything down there. Interestingly enough, Judge Schaaf in his opinion in the Fisher case that they rely upon so heavily said, where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits but subsequently chooses not to do so and even attempts to frustrate the efforts to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation. That is not what happened here. Greg did not choose to walk away from this case. He walked away because his attorney told him it was over. To hold that ... Verbally, no. Sorry? Verbally. I come back to hearing all your arguments but he obviously has a lot of interest in this case. He has a counterclaim and he gets a phone call from his attorney saying, oh, the case is settled, you're good. Doesn't get a piece of paper, doesn't do anything afterwards. It just seems so odd to me that there wasn't follow-up on that part coupled with there was nothing in the schedule whatsoever in the Statement of Financial Affairs that reported this lawsuit. He said in his affidavit that he doesn't even recall his initial bankruptcy attorney asking him about prior litigation. But he signed the Statement of Financial Affairs. Well, he did and that is a very lengthy document. I understand that but there's a question that says, have you been involved in a lawsuit within the last year? And clearly you would have in this case, wouldn't he? Certainly. Certainly. I'm sorry to interrupt but I think you're close to the end. I'm at the very end. Thank you. If you want to wrap up with a sentence or two, you may. Well, I just would ask you to ... In summary, our judge, Tracy Wise, just I believe last year in talking about this very issue, in her opinion, she says that for collateral estoppel to have preclusive effect, the defendant must have had a realistically full and fair opportunity to litigate the issue and preclusion must be consistent with principles of justice and fairness. And I just don't think it's fair that based on the totality of the circumstances that this be held against him. I think he should have his day in court and that's all we're asking for. Thank you very much. Thank you. Thank you, counsel, for extending the courtesy of the date to brother counsel. We'd like to see that. So thank you very much. Thank you. You're welcome. The court will take a brief recess.